In re BIBLE VOICE, INC., Debtor.

Carlyle MICHELMAN, Plaintiff
and Appellee

v.

Roger L. MINOR, et al., Defendants
and Appellants.

No. CV 83–2631 MRP.

United States District Court,
C.D. California.

Oct. 24, 1983.

Lewis, D'Amato, Brisbois & Bisgaard, Barry G. Kaiman, Los Angeles, Cal., for defendants and appellants Roger L. Minor, Robert M. Popeney, Ronald A. Lebetsamer, Christ T. Troupis, and Minor, Popeney & Lebetsamer, a Professional Corp.

PFAELZER, District Judge.

Defendants' appeal from an interlocutory order of the United States Bankruptcy Court denying the defendants' motion to dismiss for lack of subject matter jurisdiction came on for hearing on September 12, 1983 before the Honorable Mariana R. Pfaelzer. The Court, having considered the papers filed and oral arguments made, affirms the order of the United States Bankruptcy Court.

I. BACKGROUND

Bible Voice, Inc. ("Bible Voice"), filed a bankruptcy petition in 1980. In October 1982, plaintiff, trustee in bankruptcy of Bible Voice, filed suit in the United States

**734**

Bankruptcy Court for the Central District of California against defendants, appellants herein, for legal malpractice. Although this claim is based solely on state tort law, the parties are not of diverse citizenship, and no federal question is presented, the Bankruptcy Act of 1978 ("Bankruptcy Act") conferred federal court jurisdiction over such suits. In January 1983, the defendants moved to dismiss the complaint for lack of subject matter jurisdiction. This motion was denied by Bankruptcy Judge Calvin K. Ashland. On February 4, Judge Ashland granted defendants' motion for leave to appeal his interlocutory order. That appeal is now before this Court.

As further background in the matter, it should be noted that after Judge Ashland's order denying the defendants' motion to dismiss, defendants demanded a jury trial in the case. Pursuant to the Local Rule Governing Bankruptcy Cases and Proceedings ("Local Bankruptcy Rule"), adopted by the United States District Court for the Central District of California on December 27, 1982 (Gen. Order No. 242–A), Judge Ashland transferred the case to a district judge, the Honorable Robert M. Takasugi, who issued an order to the parties to show cause why the matter should not be referred to the state courts. In light of the existence of this appeal, Judge Takasugi has vacated his order, and stayed further proceedings pending the disposition of the appeal.

## II. DISCUSSION

### A. *The Bankruptcy Act of 1978 and Marathon*

■ Defendants' basic argument is that in *Northern Pipeline Construction Co. v. Marathon Pipe Line Company,* ("Marathon"), 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court held the whole of § 241(a) of the Bankruptcy Act, 28 U.S.C. § 1471 (1976 ed., Supp. III), unconstitutional, and, since diversity is lacking and no federal question is presented, there is no basis for federal jurisdiction in this case.

After careful analysis of the relationship between the Bankruptcy Act and *Marathon,* the Court has concluded that the defendants' interpretation of *Marathon* must be rejected as too broad. The Bankruptcy Act contained two statutory grants of jurisdiction: (1) 28 U.S.C. §§ 1471(a) and (b) conferred jurisdiction on the district courts; (2) section 1471(c) granted to the bankruptcy courts "all of the jurisdiction conferred by this section on the district courts." Section 1471(a) granted district courts original and exclusive jurisdiction over all cases "under title 11." In § 1471(b), Congress conferred upon the district courts original but not exclusive jurisdiction over "all civil proceedings ... *related* to cases under title 11." Prior to the passage of the Bankruptcy Act, actions owned by the debtor at the time it petitioned for bankruptcy and based on state tort law, such as that involved in the instant case, had to be brought in state court unless the party sued consented to federal jurisdiction. Under § 1471(b), the federal judiciary was granted jurisdiction over such cases.

*Marathon* involved a challenge to § 1471(c)—that is, to the vesting of jurisdiction in the bankruptcy courts. In *Marathon,* the Court held that the conferral of expansive powers over traditional private rights of action on non-Article III tribunals violated separation of powers principles embodied in Article III. As noted by the Sixth Circuit, *Marathon* "simply does not question the jurisdiction of the district courts" conferred in §§ 1471(a) and (b). *White Motor Corporation v. Citibank, N.A.,* 704 F.2d 254, 259 (6th Cir.1983).

That the holding is so limited is clear from Justice Rehnquist's concurrence, which was necessary to form a majority. He stated:

> I would, therefore, hold so much of the Bankruptcy Act of 1978 as enables a *Bankruptcy Court* to entertain and decide Northern's lawsuit over Marathon's objection to be violative of Art. III of the United States Constitution. Because I agree with the plurality that this grant of authority is not readily severable from

the remaining grant of authority to *Bankruptcy Courts* under § 241(a), see *ante,* [102 S.Ct.] at 2880 n. 40, I concur in the judgment. [Emphasis added.]

*Marathon,* 102 S.Ct. at 2882.

### B. *Severability*

 Given that *Marathon* invalidated only § 1471(c), the conferral of jurisdiction on the federal district courts contained in §§ 1471(a) and (b) remains valid unless these provisions are not severable from § 1471(c).

*Marathon* did contain a severability issue; however, it was limited to the question of whether the defective portions of § 1471(c) could be separated from the valid portions of that subsection. As described above, the grant in § 1471(c) was co-extensive with both §§ 1471(a) and (b). Thus, the Act purported to convey jurisdiction upon the bankruptcy courts both over core bankruptcy matters (those covered by § 1471(a)) as well as over cases "related" to such matters (those covered by § 1471(b)). The Supreme Court held only that the delegation of the latter to the bankruptcy courts violated Article III; however, it found that these grants of bankruptcy jurisdiction were not severable. Thus, it invalidated all of § 1471(c).

Defendants go further and argue that § 1471(b) cannot be severed from § 1471(c). They contend that upholding the validity of § 1471(b) would undermine the Congressional purpose underlying the Bankruptcy Act. First, they argue that since district courts must engage in de novo review of "related proceedings," Local Bankruptcy Rule (e)(2)(B), the efficiency and economy Congress sought in enacting § 1471(b) is defeated. Second, defendants argue that the requirement that district judges conduct jury trials thwarts Congress' goal that "[a]ctions that formerly had to be tried in the state court or in the Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy court." S.Rep. No. 95–989, 95th Cong., 2d Sess. 153, *reprinted in* 1978, U.S.CODE CONG. & AD. NEWS 5787, 5939. Since Congress intended to vest jurisdiction over cases related to bankruptcy matters in the bankruptcy courts, and the conferral of such jurisdiction on the district courts was granted solely as a vehicle for doing so, defendants' argument runs, § 1471(b) cannot stand alone now that § 1471(c) has been invalidated. Although defendants' argument does merit consideration, upon analysis, the Court has concluded that it does not furnish a basis upon which to strike down § 1471(b).

While the standard of review in the Local Bankruptcy Rule is likely to impose a greater burden on the district courts than the "clearly erroneous" standard that apparently would have governed under the Bankruptcy Act, *see Marathon,* 102 S.Ct. at 2863 n. 5, the bankruptcy judges are still likely to serve a valuable function akin to that intended by Congress. Further, contrary to defendants' assertions, the requirement in the Local Bankruptcy Rule that district judges conduct jury trials in "related" proceedings is unlikely to have the impact on the district courts which defendants suggest. Section 1471(d) gives the federal courts unreviewable discretion to decline jurisdiction in "related" cases. Thus, if a district court considers that a related case ought to be heard in state court, it need only invoke § 1471(d). In the instant case, Judge Takasugi already appears to have considered utilization of this provision.

Thus, if subsections (a) and (b) of § 1471 are construed as severable from subsection (c), bankruptcy courts remain an essential part of the bankruptcy system. Such a flexible scheme appears more closely aligned with the Congressional plan envisioned in the Bankruptcy Act than the state of affairs which would result from a holding that §§ 1471(b) and (c) cannot be severed.

The conclusion that §§ 1471(a) and (b) are severable from subsection (c) has been reached by several federal courts. *See, e.g., White Motor Corporation v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983); *In re Hansen,* 702 F.2d 729, 730 (8th Cir.1983); *In re Braniff Airways, Inc.,* 27 B.R. 231 (Bkrtcy.N.D.

736

Tex.) *aff'd,* 700 F.2d 214 (5th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983); *In re Color Craft Press, Ltd.,* 27 B.R. 962 (D.C.D. Utah 1983). *But see Chamberlain Livestock Auction, Inc. v. Aberdeen Production Credit Association,* 22 B.R. 750 (D.C.D.S.D. 1982).

## C. *Jurisdiction*

■ In addition to their argument with respect to the *Marathon* case, defendants also make the related argument that since neither diversity nor a federal question is present in the case, there is no ground upon which to base Article III jurisdiction. However, defendants ignore a long line of Supreme Court cases holding that Congressional grants of jurisdiction to federal courts over suits "related" to bankruptcy matters comports with Article III. *See Schumacher v. Beeler,* 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (1934); *Williams v. Austrian,* 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947). Justice Brennan's plurality opinion in *Marathon* recognized that no constitutional obstacle existed with respect to federal court jurisdiction over such claims. *See Marathon,* 102 S.Ct. at 2872 n. 26. Thus, so long as Congress intended to vest jurisdiction in the federal courts over actions related to bankruptcy matters, no Article III objection is viable even though the standard requisites for jurisdiction—diversity or federal question—are absent.[1]

Defendants rely heavily on *Chamberlain Livestock Auction, Inc.,* 22 B.R. 750, in which a district court dismissed a case "related" to a case under Title 11, holding that the court lacked subject matter jurisdiction. While defendants' argument that *Chamberlain* is analogous to the instant case is sound, *Chamberlain* itself is not. The opinion reflects no recognition of the law discussed above, and therefore appears to conclude erroneously that the absence of diversity or a federal question deprives the court of jurisdiction.

### D. *28 U.S.C. § 1334 as an alternative ground for jurisdiction*

■ Several other courts sustaining Local Bankruptcy Rules in other jurisdictions have relied on 28 U.S.C. § 1334 in addition to § 1471. *See, e.g., White Motor Corporation,* 704 F.2d at 260–61; *In re Hansen,* 702 F.2d at 730; *In re Braniff Airways, Inc.,* 700 F.2d at 215. However, even if the analysis in these opinions is correct, § 1334 does not provide an alternative basis for the holding in the instant case. Section 1334, one of the jurisdictional provisions in effect prior to the passage of the Bankruptcy Act, grants the district courts original jurisdiction, "exclusive of the courts of the States, of all matters and proceedings in bankruptcy."

Section 1334 will not be formally repealed until April 1, 1984. Several courts have rejected the contention that § 1334 was impliedly abrogated by § 1471 and thereby have held that § 1334 serves as a jurisdictional grant existing simultaneously with § 1471. However, the facts of the instant case render § 1334 inapplicable. This is so because, as this case involves purely state law questions (and thus is a "related matter" under § 1471(b)), it does not fall into the § 1334 definition of a "matter or proceeding" in bankruptcy. The legislative history accompanying the 1978 Act clearly indicates that § 1334 was a narrower grant than § 1471(b) and did not encompass cases such as this one. *See* S.Rep. No. 95–989, 95th Cong., 2nd Sess. 153, *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS 5787, 5939.

### E. *Bankruptcy Courts as Adjuncts*

■ As demonstrated above, §§ 1471(a) and (b) remain intact after *Marathon;* therefore, jurisdiction of "related" cases, such as *In re Bible Voice,* in federal district courts is proper. In such cases, the delegation of certain judicial functions by the federal district to bankruptcy judges, as

---

1. Hart and Wechsler attribute the constitutionality of such jurisdiction to the doctrine of protective jurisdiction. *See* P. Bator, P. Mishkin, D. Shapiro and H. Wechsler, Hart and Wechsler's THE FEDERAL COURTS AND THE FEDERAL SYSTEM 868–69 (2d ed. 1973).

prescribed by the Local Bankruptcy Rule, is proper under *Marathon.*

Separation of powers principles embodied in Article III require that "the functions of the adjunct be limited in such a way that 'the essential attributes' of judicial power are retained in the Art. III court." *Marathon,* 102 S.Ct. at 2874 (quoting *Crowell v. Benson,* 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932)). In *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), the Supreme Court upheld a section of the Magistrates Act, 28 U.S.C. § 636(b)(I)(B), which permits a district court to refer to a magistrate motions to suppress evidence. Since the district court judge was obligated under the statute to conduct a de novo review of that portion of the magistrate's recommendation to which objection was made, the essential attributes of judicial power remained in the Article III tribunal.

The provisions of the Local Bankruptcy Rule applicable to the instant case satisfy constitutional requirements. Under the Rule, a bankruptcy judge does not enter a judgment or dispositive order in "related" proceedings. Local Bankruptcy Rule (d)(3)(B). A district judge is to review all proposed orders, whether or not an appeal is filed, Local Bankruptcy Rule (e)(2)(A)(iii), and, in conducting the review, the judge need give no deference to the findings of the bankruptcy judge. Local Bankruptcy Rule (e)(2)(B). All district and appellate courts which have considered similar local rules in other judicial districts have concluded that they were constitutional. *See, e.g., White Motor Corp.,* 704 F.2d at 261–64; *In re Hansen,* 702 F.2d at 729.

As stated, after the bankruptcy judge refused to dismiss this case for want of jurisdiction, the defendants requested a jury trial; as a consequence, the case was transferred to a district judge pursuant to Local Bankruptcy Rule (d)(1). In its present posture, therefore, this case does not involve a delegation of a judicial function to an adjunct. Thus, as presently situated, this case does not implicate the constitutional concerns involved in *Marathon* and *Raddatz.*

## IV. CONCLUSION

*Marathon* struck down only the conferral of jurisdiction on bankruptcy judges contained in § 1471(c) and this Court finds that § 1471(b) is severable from § 1471(c). Therefore, jurisdiction in the federal district courts is proper. Any subsequent delegation of duties to bankruptcy judges, as authorized by this judicial district's Local Bankruptcy Rule, satisfies constitutional requirements.

For the reasons stated herein, the order of the bankruptcy court denying the defendants' motion to dismiss this action for lack of subject matter jurisdiction is AFFIRMED.